UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 11-24302-CIV-ALTONAGA/Simonton

**SHEVEN J. MARSHALL**, *et al.*,

    Plaintiffs,
vs.

**REGIONS BANK**, *et al.*,

    Defendants.
_____/

## ORDER

**THIS CAUSE** came before the Court on Defendants, Officer James Washington ("Washington") and Officer Orlando Lazaro Fleites ("Fleites") (collectively, "Officers[']") Motion to Dismiss ("Motion") [ECF No. 7], filed December 7, 2011. Plaintiffs, Sheven J. Marshall ("Marshall") and Zuleyka Bremer ("Bremer"), filed a Complaint [ECF No. 1-2] against the Officers and Defendant Regions Bank on November 3, 2011. The Complaint contains five counts: (1) false imprisonment as to Regions Bank; (2) intentional infliction of emotional distress as to Regions Bank; (3) negligence as to Regions Bank on behalf of Plaintiff Marshall; (4) negligence as to Regions Bank on behalf of Plaintiff Bremer; and (5) false arrest, false imprisonment, and unlawful detention in violation of 42 U.S.C. § 1983 ("section 1983"), as to Washington and Fleites. Washington filed a Notice of Removal [ECF No. 1], with Regions Bank's consent, on November 30, 2011. At the time the Notice of Removal was filed, Fleites had not yet been served. Fleites filed a notice of consent to removal on December 12, 2011 (*see* [ECF No. 9]), and a notice of joinder in the Motion on December 14, 2011 (*see* [ECF No. 14]). The Officers move to dismiss the Complaint pursuant to Federal Rule of Civil Procedure

12(b)(6). Plaintiffs filed a Response in Opposition ("Response") [ECF No. 17] on December 17, 2011, to which the Officers filed a Reply [ECF No. 28] on January 3, 2012. The Court has carefully considered the Motion, the parties' submissions, and applicable law.

## I.    BACKGROUND[1]

Plaintiff Marshall is an African-American man and Florida resident. (*See* Compl. ¶ 2). Plaintiff Bremer is a biracial Hispanic woman, also a Florida resident. (*See id.* ¶ 3). Defendant Regions Bank is a bank incorporated under Alabama law and maintains 49 offices to transact business within Miami-Dade County. (*See id.* ¶¶ 4–5). Defendant Washington is a Miami-Dade County resident and at all relevant times was employed as a Miami-Dade Police Department Officer. (*See id.* ¶ 7). Fleites is also a Miami-Dade County resident, and also was employed at all relevant times as an Officer for the Miami-Dade Police Department. (*See id.* ¶ 8).

On January 31, 2011, Marshall entered a Regions Bank branch office in Miami, Florida, with his girlfriend Bremer, to open a checking account and deposit his federal income tax return check. (*See id.* ¶ 14). Marshall provided Regions Bank his driver's license and offered other forms of identification, along with the check. (*See id.* ¶¶ 15–16). Regions Bank informed Marshall it needed a couple of minutes to verify the authenticity of the check. (*See id.* ¶ 17). Regions Bank determined that the check was possibly fraudulent. (*See id.* ¶ 19). Regions Bank kept the check so Marshall would not leave the branch and called the Miami-Dade Police Department to report that Marshall was attempting to deposit a possibly fraudulent check. (*See id.* ¶¶ 22–23). Regions Bank "advised the Miami-Dade Police Department that Plaintiff Marshall had attempted to deposit a fraudulent check." (*Id.* ¶ 24).

Washington arrived at the branch and told Marshall to stand and put his hands behind his

---

[1] The factual background is taken from the allegations in the Complaint, which are accepted as true for the purposes of the Motion.

back. (*See id.* ¶ 25). Marshall "stood up calmly and said that he had not done anything." (*Id.* ¶ 26). Washington again asked Marshall to put his hands behind his back, then "grabbed him by the collar and pulled him through the lobby, which was full of customers and bank employees," toward a room near the branch entrance. (*Id.* ¶ 27). Holding Marshall by the collar, Washington instructed Marshall to open the door and turn on the lights, which Marshall did. (*See id.* ¶ 28). Washington then removed a Taser from his waistband and pointed it at Marshall, telling him to sit down. (*See id.* ¶ 29). Marshall then tried to telephone Bremer to inform her of the situation, but he hung up when Washington demanded it. (*See id.* ¶ 30). Washington told Marshall to stand and put his hands behind his back, after which Marshall again asked what he had done. (*See id.* ¶ 31). Fleites then entered the room, "pushed Plaintiff Marshall by the middle of his back, and slammed him chest first into a desk." (*Id.* ¶ 32). Fleites "yelled profanely" at Marshall and "forcefully grabbed" his wrists, handcuffing and pushing him into a chair. (*Id.* ¶ 33).

Bremer had accompanied Marshall to the branch, but left to go to work while Regions Bank was supposedly verifying the authenticity of the check. (*See id.* ¶ 34). Bremer then returned to the branch and "was promptly handcuffed upon entering." (*Id.*). Regions Bank accused Bremer of being Marshall's accomplice to alleged check fraud, and she was led to a room for questioning. (*See id.* ¶ 35). Marshall saw Bremer in handcuffs and asked why she was detained, to which one of the Officers responded that she was an accomplice to check fraud. (*See id.* ¶ 36). Marshall offered to show his tax paperwork with the name and address of his tax preparer, and Fleites kept telling Marshall "to tell the truth," as check fraud was a felony. (*Id.* ¶ 37).

Detective Hernandez ("Hernandez") of the Miami-Dade Police Department then arrived and read Marshall his Miranda rights. (*See id.* ¶ 38). At this point, three hours had passed

during which Plaintiffs were confined at the branch against their will. (*See id.* ¶ 39). Hernandez questioned Marshall about the check. (*See id.* ¶ 40). Marshall explained to Hernandez that there was a blue folder in Bremer's automobile containing the completed tax return. (*See id.* ¶ 41). Hernandez then questioned Bremer. (*See id.* ¶ 42). After Bremer was allowed to show Hernandez the blue folder containing the tax return, Hernandez visited the residence of the tax preparer for further investigation. (*See id.* ¶ 43). Hernandez then concluded the check was legitimate, returned to the Regions Bank branch, returned Marshall's check, told Marshall that Regions Bank had made a mistake, and released Marshall from the handcuffs. (*See id.* ¶¶ 44–45). Plaintiffs were ultimately detained and interrogated at the Regions Bank branch for over four hours. (*See id.* ¶ 47).

## II.     LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although this pleading standard "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555). Pleadings must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Indeed, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 129 S. Ct. at 1950 (citing *Twombly*, 550 U.S. at 556). To meet this "plausibility standard," a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949 (citing *Twombly*, 550 U.S. at 556). "The mere possibility the defendant acted unlawfully is insufficient to survive a motion to

dismiss." *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1261 (11th Cir. 2009) (citing *Iqbal*, 129 S. Ct. at 1949).

### III. ANALYSIS

The Officers argue that Count V of the Complaint, alleging a violation of section 1983 for false arrest, false imprisonment, and unlawful detention, is barred by the doctrine of qualified immunity. (*See* Mot. 4).[2] "Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Kingsland v. City of Miami*, 382 F.3d 1220, 1231 (11th Cir. 2004) (quoting *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002)). In order to illustrate entitlement to the qualified-immunity defense, a government official must demonstrate that the acts complained of were committed within the scope of the officer's discretionary authority. *Id.* at 1232. Once the officer has done so, "the burden shifts to the plaintiff to show that qualified immunity is not appropriate." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002); *see also McClish v. Nugent*, 483 F.3d 1231, 1237 (11th Cir. 2007); *Montoute v. Carr*, 114 F.3d 181, 184 (11th Cir. 1997) ("[O]nce an officer or official has raised the defense of qualified immunity, the burden of persuasion as to that issue is on the plaintiff."). This is embodied in the Eleventh Circuit's two-part *Zeigler/Rich* analysis:

---

[2] Plaintiffs' Count V section 1983 claim is not a model of clarity. The Court accepts the Officers' characterization of the claim, particularly as Plaintiffs do not object to it in their Response; moreover, the two arguments made in the Response focus on the reasonableness of Plaintiffs' detention, as well as the existence of probable cause for arrest. (*See generally* Resp.).

The Court treats a claim for false arrest, false imprisonment, and unlawful detention, as a single claim for false arrest. "[U]nder Florida law false arrest and false imprisonment are different labels for the same cause of action." *Rankin v. Evans*, 133 F.3d 1425, 1430 n.5 (11th Cir. 1998). Moreover, "[i]n Florida, the tort of false imprisonment is defined as 'the unlawful restraint of a person against his will, the gist of which action is the unlawful detention of the plaintiff and the deprivation of his liberty.'" *Johnson v. Barnes & Noble Booksellers, Inc.*, 437 F.3d 1112, 1116 (11th Cir. 2006) (quoting *Escambia Cnty. Sch. Bd. v. Bragg*, 680 So. 2d 572, 572 (Fla. 1st DCA 1996)).

> 1. The defendant public official must first prove that "he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred."
>
> 2. Once the defendant public official satisfies his burden of moving forward with the evidence, the burden shifts to the plaintiff to show lack of good faith on the defendant's part. This burden is met by proof demonstrating that the defendant public official's actions "violated clearly established constitutional law."

*Courson v. McMillian*, 939 F.2d 1479, 1487 (11th Cir. 1991) (quoting *Rich v. Dollar*, 841 F.2d 1558, 1563 (11th Cir. 1988); *Zeigler v. Jackson*, 716 F.2d 847, 849 (11th Cir. 1983) (per curiam)).

In order to prevent dismissal of his or her claims under the doctrine of qualified immunity, a plaintiff must first show that the facts, taken in the light most favorable to the plaintiff, demonstrate the defendant violated a constitutional right. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Sharp v. Fisher*, 532 F.3d 1180, 1183 (11th Cir. 2008); *McClish,* 483 F.3d at 1237. Even if the facts demonstrate a violation, the plaintiff still has the burden to show that the constitutional rights were "clearly established" at the time of the violation. *See Saucier*, 533 U.S. at 201; *Sharp*, 532 F.3d at 1183; *McClish*, 483 F.3d at 1237. Decisions of the United States Supreme Court, the Eleventh Circuit, and the Supreme Court of Florida can clearly establish law in this jurisdiction. *See McClish*, 483 F.3d at 1237. For the law to be "clearly established," it must be so clear that every objectively reasonable official understands it to prohibit the challenged act. *See Vinyard*, 311 F.3d at 1353. The purpose of this requirement is to "ensure that before they are subjected to suit, officers are on notice their conduct is unlawful." *Saucier*, 533 U.S. at 206.

> That the very act (or something materially similar to it) in question has previously been held unlawful by a court is not always necessary. But in light of preexisting law, the unlawfulness must be apparent: plain, clear, obvious. Unless the government

> official's act is so obviously wrong, in the light of preexisting law, that only a plainly incompetent official or one who was knowingly violating the law would have committed the act, the official is entitled to qualified immunity.

*Snider v. Jefferson State Cmty. Coll.*, 344 F.3d 1325, 1328 (11th Cir. 2003); *Montoute*, 114 F.3d at 184 ("[T]he qualified immunity standard is broad enough to cover some 'mistaken judgment,' and it shields from liability 'all but the plainly incompetent or those who knowingly violate the law.'" (quoting *Malley v. Briggs*, 475 U.S. 335, 343 (1986)).

Here, Plaintiffs do not dispute that the Officers were government officials performing discretionary functions at the time of the events at issue, nor does the Court find any indication in the Complaint to the contrary. Therefore, the burden shifts to Plaintiffs to demonstrate that the Officers violated a clearly established statutory or constitutional right to overcome the qualified immunity defense. They fail to do so.

Plaintiffs allege that the Officers subjected them to a false arrest in violation of section 1983.

> A warrantless arrest without probable cause violates the Fourth Amendment and provides the basis for a Section 1983 claim. *See Marx v. Gumbinner*, 905 F.2d 1503, 1505 (11th Cir.1990). The existence of probable cause, however, is an absolute bar to such a claim. *Id.* at 1505–06. The standard for determining the existence of probable cause is the same under both Florida and federal law. *Rankin v. Evans*, 133 F.3d 1425, 1433 (11th Cir.1998). Probable cause exists where "a reasonable man would have believed probable cause existed had he known all of the facts known by the officer." *Id.* (quotation and brackets omitted). "[T]he subjective belief of the arresting officer plays no role in a probable cause analysis under either Florida or federal law." *Id.* at 1434 n.11.

*Sada v. City of Altamonte Springs*, 434 F. App'x 845, 849 (11th Cir. 2011). "Probable cause is 'judged not with clinical detachment but with a common sense view to the realities of normal life.'" *Lorenzo v. City of Tampa*, 259 F. App'x 239, 242 (11th Cir. 2007) (quoting *Rankin*, 133

F.3d at 1436). "This standard is met when the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed . . . an offense." *Rankin* 133 F.3d at 1435. Moreover, if an officer lacked probable cause for arrest, the existence of "arguable probable cause" may be a successful defense to a false arrest claim. *Poulakis v. Rogers*, 341 F. App'x 523, 526 (11th Cir. 2009) (citing *Case v. Eslinger*, 555 F.3d 1317, 1327 (11th Cir. 2009) ("If a constitutional violation occurred because the officer lacked probable cause, we next consider whether arguable probable cause existed. The officer may still be shielded from liability because his actions did not violate clearly established statutory or constitutional rights of which a reasonable person would have known.")).

As an initial matter, the Court addresses the question of whether an arrest occurred in the first place.

> In determining "when" a person is arrested, we ask at what point, "in view of all the circumstances surrounding the incident, a reasonable person would have believed he [she] was not free to leave." *United States v. Hammock,* 860 F.2d 390, 393 (11th Cir.1988). Circumstances which indicate an arrest include: the blocking of an individual's path or the impeding of his progress; the display of weapons; the number of officers present and their demeanor; the length of the detention; and the extent to which the officers physically restrained the individual. This list is not exclusive. *United States v. Hammock,* at 393.

*United States v. Hastamorir*, 881 F.2d 1551, 1556 (11th Cir. 1989). "[I]f the totality of circumstances indicates that an encounter has become too intrusive to be classified as an investigative detention, the encounter is a full-scale arrest, and the government must establish that the arrest is supported by probable cause." *Id.* (citation omitted).

Plaintiffs contend that their detention was not an arrest, but an investigatory detention, or

"*Terry*[3] stop." "[A]n officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." *United States v. Gordon*, 231 F.3d 750, 754 (11th Cir. 2000) (quoting *Illinois v. Wardlow*, 528 U.S. 119, 120 (2000)). Plaintiffs argue, however, that the *Terry* stop, lasting four hours, was unconstitutional. (*See* Resp. 2). They concede the Officers may have had the necessary initial reasonable suspicion, but contend that keeping Plaintiffs handcuffed and detained for four hours while Hernandez investigated the check was unnecessarily lengthy and unconstitutional. (*See id*. 2–3). Plaintiffs quote *United States v. Place*, 462 U.S. 696 (1983), in which the Court stated, "although we decline to adopt any outside time limitation for a permissible *Terry* stop, we have never approved a seizure of the person for the prolonged 90-minute period involved here and cannot do so on the facts presented by this case." 462 U.S. at 709–10. Plaintiffs assert, "[w]hen a good explanation is not provided," a lengthy investigatory detention is unwarranted. (Resp. 3).

The Officers insist that the detention, even if an investigatory stop, was lawful. (*See* Reply 2). They cite *United States v. Gil*, 204 F.3d 1347 (11th Cir. 2000), in support for the proposition that the length of the detention did not exceed that of an investigatory stop. In *Gil*, the police engaged in a *Terry* stop lasting seventy-five minutes, or the length of time to investigate a house, and did not arrest Gil until after her house was searched and probable cause found. *See id.* at 1350. The Eleventh Circuit held that as "[t]he police were diligent in their investigation of the residence and did not detain Ms. Gil without formally arresting her for any amount of time longer than it was necessary to complete that investigation," the length of the *Terry* stop did not render it invalid. *Id.* at 1351. The Officers also cite *United States v. Cherubin*, No. 2001-216/223, 2010 WL 924272 (D. V.I. Mar. 9, 2010), in which the court held a

---

[3] *Terry v. Ohio*, 392 U.S. 1 (1968).

9

*Terry* stop lasting four hours to be valid where the "police acted diligently" in investigating a potentially illegal entry into the United States. 2010 WL 924272, at *5. The court in *Cherubin* did acknowledge, however, that four hours was "unusually lengthy for Terry purposes." *Id.*

The Court finds that although the investigatory stop was lengthy, Plaintiffs have not met their burden to demonstrate a violation of *clearly established* constitutional law on the part of the Officers. Even in the authority cited by Plaintiffs on this point, *United States v. Place*, the Supreme Court expressly declined to impose a bright-line rule as to the outside time limit of an investigation, but made its finding "on the facts presented by [that] case." 462 U.S. at 709–10. While four hours is certainly lengthy, the Complaint states the time was spent in investigating the information provided by Plaintiffs about the tax return and check, including the visit to the tax preparer's home. The parties do not dispute there was at least reasonable suspicion to detain Plaintiffs, and nothing in the Complaint suggests the Officers or Hernandez were not diligent in their investigation. *See Gil*, 204 F.3d at 1350. The Court has no authority before it allowing it to conclude that the investigatory stop in the instant action, as presented in the Complaint, was a violation of clearly-established law.

Moreover, even if the detention were a full-blown arrest, the allegations of the Complaint establish that there was probable cause, and at least arguable probable cause, to arrest Plaintiffs. Plaintiffs state, "[r]easonable officers could not have believed that probable cause existed to arrest a man for merely attempting to deposit a legitimate check. And no reasonable officer would believe that probable cause existed to arrest a woman who simply witnessed a legitimate financial transaction." (Resp. 4). Plaintiffs additionally argue that their race, along with Marshall's build, constituted the real cause for their arrest. (*See* Resp. 2). This, however, is not alleged in the Complaint, which clearly states the Officers were responding to Regions Bank's

call regarding a fraudulent check. (*See* Compl. ¶¶ 24–25). The Complaint alleges no facts suggesting that the Officers took Plaintiffs' race into account for any reason — Plaintiffs cannot now argue this in the Response as a reason to defeat the Motion.

The reason stated in the Complaint itself for Plaintiffs' detention is that "Defendant Regions [Bank] called the Miami-Dade Police Department to report that Plaintiff Marshall was attempting to deposit a possibly fraudulent check. Upon information and belief, Defendant Regions [Bank] advised the Miami-Dade Police Department that Plaintiff Marshall had attempted to deposit a fraudulent check." (Compl. ¶¶ 23–24). These allegations establish probable cause. *See Hebron v. Touhy*, 18 F.3d 421, 422 (7th Cir. 1994) (complaints from self-described victims of crimes "ordinarily establish probable cause," unless "information from or about" reporting victim creates reasonable suspicion "making further investigation prudent"); *Miloslavsky v. AES Eng'g Soc'y, Inc.*, 808 F. Supp. 351, 355 (S.D.N.Y. 1992) ("[I]t is well-established that a law enforcement official has probable cause to arrest if he received his information from some person, normally the putative victim or eyewitness, who it seems reasonable to believe is telling the truth.") (citation omitted)). The Officers had no information about Regions Bank or the teller reporting the fraud to cause suspicion, and none is alleged in the Complaint; it was not unreasonable to rely on the account of the teller who had examined the check. The Officers nevertheless conducted further investigation on the basis of Marshall's information, but probable cause for arrest existed at the moment of Plaintiffs' detention.

As to Bremer, the Complaint makes clear Marshall and Bremer attempted to deposit the check together (*see* Compl. ¶ 14), and Regions Bank "accused Bremer of being an accomplice to Plaintiff Marshall's alleged check fraud" (*id.* ¶ 35). There was probable cause to arrest Bremer along with Marshall.

11

The Court finds that Officers Fleites and Washington are shielded from liability for Plaintiffs' false arrest claim, by virtue of qualified immunity — the claim in Count V of the Complaint therefore fails as pleaded.

## IV.   CONCLUSION

Based on the foregoing, it is

**ORDERED AND ADJUDGED** that the Motion to Dismiss **[ECF No. 7]** is **GRANTED**. Count V of the Complaint [ECF No. 1] is **DISMISSED** with leave to amend. Plaintiffs shall have until January 17, 2012 to file an amended complaint.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 5th day of January, 2012.

*[signature]*
**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc:   counsel of record