UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 11-24302-CIV-ALTONAGA/Simonton

**SHEVEN J. MARSHALL**, *et al.*,

    Plaintiffs,
vs.

**REGIONS BANK**, *et al.*,

    Defendants.
_____/

## ORDER

**THIS CAUSE** came before the Court on Defendants, Carlos Garcia ("Garcia") and Alfredo Ramirez's ("Ramirez['s]") Motion to Dismiss Negligence Counts in Amended Complaint ("Motion") [ECF No. 52], filed January 30, 2012. On November 3, 2011, Plaintiffs, Sheven J. Marshall ("Marshall") and Zuleyka Bremer ("Bremer"), filed a Complaint [ECF No. 1-2] against Defendants, Officers James Washington ("Washington") and Orlando Fleites ("Fleites") (collectively, "Officers"), and Regions Bank, who removed the action to this Court. The Court dismissed the Complaint's claim under 42 U.S.C. section 1983 ("section 1983") against the Officers on the basis of qualified immunity. (*See* Jan. 5, 2012 Order [ECF No. 30]).

Plaintiff filed an Amended Complaint [ECF No. 31] on January 6, 2012, adding Garcia and Ramirez as Defendants, and asserting six claims under state law (Counts I–VI) as well as a section 1983 claim (Count VII) against the Officers. The Court granted the Officers' motion to dismiss Count VII. (*See* Feb. 3, 2012 Order [ECF No. 54]). Count V of the Amended Complaint alleges negligence as to Ramirez, and Count VI alleges negligence as to Garcia. (*See* Am. Compl. 16–20). Garcia and Ramirez move to dismiss under Federal Rule of Civil

Procedure 12(b)(6). (*See* Mot. 1). The Court has carefully considered the Motion, the record, and applicable law.

## I. BACKGROUND[1]

Plaintiff Marshall is an African-American man and Florida resident. (*See* Am. Compl. ¶ 2). Plaintiff Bremer is a biracial Hispanic woman, also a Florida resident. (*See id.* ¶ 3). Defendant Regions Bank is a bank incorporated under Alabama law and maintains 49 offices to transact business within Miami-Dade County. (*See id.* ¶¶ 4–5). Defendants Ramirez and Garcia are both Florida residents and were both employed at all relevant times by Regions Bank. (*See id.* ¶¶ 7–8). Defendants Washington and Fleites are both Florida residents and at all relevant times were both employed as Miami-Dade Police Department Officers. (*See id.* ¶¶ 9–10).

On January 31, 2011, Marshall entered a Regions Bank branch office in Miami, Florida, with his girlfriend Bremer, to open a checking account and deposit his federal income tax return check. (*See id.* ¶¶ 16–17). Marshall provided Regions Bank his driver's license and offered other forms of identification, along with the check. (*See id.* ¶¶ 18–19). Ramirez was the teller who dealt with Marshall in connection with his request to open the account and deposit the check. (*See id.* ¶ 20). Garcia was a manager at the branch in charge of supervising branch personnel and tellers including Ramirez. (*See id.* ¶ 30). Regions Bank informed Marshall it needed a couple of minutes to verify the authenticity of the check. (*See id.* ¶ 21). Ramirez and Regions Bank determined that the check was possibly fraudulent. (*See id.* ¶¶ 24–25). Regions Bank, Ramirez, and Garcia assumed on the basis of Marshall's race and the size of the check that the check was possibly fraudulent. (*See id.* ¶ 26). Regions Bank allegedly failed to train and properly supervise its personnel regarding check verification, and it lacked appropriate policies

---

[1] The factual background is taken from the allegations in the Amended Complaint, which are accepted as true for the purposes of the Motion.

and procedures for check verification. (*See id.* ¶¶ 27–28).

Regions Bank kept the check so Marshall would not leave the branch and called the Miami-Dade Police Department to report that Marshall was attempting to deposit a possibly fraudulent check. (*See id.* ¶¶ 29, 35). Washington arrived at the branch and told Marshall to stand and put his hands behind his back. (*See id.* ¶ 36). Marshall "stood up calmly and said that he had not done anything." (*Id.* ¶ 37). Washington again asked Marshall to put his hands behind his back, then "grabbed him by the collar and pulled him through the lobby, which was full of customers and bank employees," toward a room near the branch entrance. (*Id.* ¶ 38). Holding Marshall by the collar, Washington instructed Marshall to open the door and turn on the lights, which Marshall did. (*See id.* ¶ 39). Washington then removed a Taser from his waistband and pointed it at Marshall, telling him to sit down. (*See id.* ¶ 40). Marshall then tried to telephone Bremer to inform her of the situation, but he hung up when Washington demanded it. (*See id.* ¶ 41). Washington told Marshall to stand and put his hands behind his back, after which Marshall again asked what he had done. (*See id.* ¶ 42). Fleites then entered the room, "pushed Plaintiff Marshall by the middle of his back, and slammed him chest-first into a desk." (*Id.* ¶ 43). Fleites "yelled profanely" at Marshall and "forcefully grabbed" his wrists, handcuffing and pushing him into a chair. (*Id.* ¶ 44).

Bremer had accompanied Marshall to the branch, but left to go to work while Regions Bank was supposedly verifying the authenticity of the check. (*See id.* ¶ 45). Bremer then returned to the branch and "was promptly handcuffed upon entering." (*Id.*). Regions Bank accused Bremer of being Marshall's accomplice to alleged check fraud, and she was led to a room for questioning. (*See id.* ¶ 46). Marshall saw Bremer in handcuffs and asked why she was detained, to which one of the Officers responded that she was an accomplice to check fraud.

(*See id.* ¶ 47). Marshall offered to show his tax paperwork with the name and address of his tax preparer, and Fleites kept telling Marshall "to tell the truth," as check fraud was a felony. (*Id.* ¶ 48).

Detective Hernandez ("Hernandez") of the Miami-Dade Police Department then arrived and read Marshall his *Miranda* rights. (*See id.* ¶ 49). At this point, three hours had passed during which Plaintiffs were confined at the branch against their will. (*See id.* ¶ 50). During those three hours, Washington and Fleites did not do any research or investigation into the authenticity of the check. (*See id.* ¶ 51). Hernandez questioned Marshall about the check. (*See id.* ¶ 55). Marshall explained to Hernandez that there was a blue folder in Bremer's automobile containing the completed tax return. (*See id.* ¶ 56). Hernandez then questioned Bremer. (*See id.* ¶ 57). After Bremer was allowed to show Hernandez the blue folder containing the tax return, Hernandez visited the residence of the tax preparer for further investigation. (*See id.* ¶ 58). Hernandez then concluded the check was legitimate, returned to the Regions Bank branch, returned Marshall's check, told Marshall that Regions Bank had made a mistake, and released Marshall from the handcuffs. (*See id.* ¶¶ 59–60). Plaintiffs were ultimately detained and interrogated at the Regions Bank branch for over four hours. (*See id.* ¶ 65).

## II. LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although this pleading standard "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555). Pleadings must contain "more than labels and conclusions, and a formulaic

4

recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Indeed, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 129 S. Ct. at 1950 (citing *Twombly*, 550 U.S. at 556). To meet this "plausibility standard," a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949 (citing *Twombly*, 550 U.S. at 556). "The mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss." *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1261 (11th Cir. 2009) (citing *Iqbal*, 129 S. Ct. at 1949).

### III. ANALYSIS

In Counts V and VI of the Amended Complaint Plaintiffs allege negligence as to Ramirez and Garcia. (*See* Am. Compl. ¶¶ 100–14). Plaintiffs allege both Ramirez and Garcia had a duty to use reasonable care in "properly handling matters involving the legitimacy of checks" and in verifying Marshall's check. (*See id.* ¶¶ 101–02, 108–09). According to Plaintiffs, Ramirez breached this duty by:

> a. Failing to use reasonable care in handling the deposit of Plaintiff Marshall's legitimate federal income tax return check.
>
> b. Failing to use reasonable care in researching, investigating and determining the legitimacy of Plaintiff Marshall's federal income tax return check in a timely fashion.
>
> c. Failing to use reasonable care in wrongly accusing Plaintiff Bremer of assisting in trying to open a bank account to deposit a possibly fraudulent check.
>
> d. Failing to use reasonable care by calling the police to falsely arrest and detain Plaintiffs for simply trying to open a bank account to deposit a good check.
>
> e. Failing to use reasonable care by falsely accusing Plaintiff Bremer of assisting in trying to open a bank account to deposit

> a possibly fraudulent check.
>
> f.  Failing to use reasonable care by not timely and accurately determining that the check that Plaintiff Marshall was trying to deposit was a good and legitimate check.
>
> g.  Failing to use reasonable care in not timely verifying that Plaintiff Marshall's check was good and legitimate.
>
> h.  Failing to use reasonable care in making unfounded determinations about Plaintiff Marshall's legitimate tax refund check on the basis of a racially-biased hunch.

(*Id.* ¶ 103).

Garcia allegedly had a duty to "supervise the branch personnel and tellers," including Ramirez, with respect to Marshall and Bremer. (*See id.* ¶ 110). As to Garcia, Plaintiffs allege he breached his duties by repeating several of the allegations made as to Ramirez, minus the allegation regarding calling the police, plus the following:

> c.  Failing to use reasonable care in supervising tellers and branch personnel on how to properly handle the investigation of the legitimacy of a check so as to avoid falsely accusing Plaintiff Marshall of trying to open a bank account to deposit a possibly fraudulent check.
>
> d.  Failing to use reasonable care in supervising tellers and branch personnel so as to avoid the wrongful accusation against Plaintiff Bremer of assisting in trying to open a bank account to deposit a possibly fraudulent check.
>
> \*       \*       \*
>
> g.  Failing to use reasonable care to supervise tellers and branch personnel, such as Defendant Ramirez, so as to avoid incorrect determinations about Plaintiffs and wrongful accusations against Plaintiffs on the basis of racially-based hunches.

(*Id.* ¶ 111).

Garcia and Ramirez raise several arguments as to why Counts V and VI fail as pleaded. The Court addresses each in turn.

6

*a. Negligence in connection with calling the police*

According to Garcia and Ramirez, Counts V and VI fail to state a claim because "negligence in connection with making a police report is not a valid cause of action under Florida law." (Mot. 2). Garcia and Ramirez state, "Florida courts have never recognized a separate tort for 'negligently' swearing out a warrant for arrest. Such cases may be brought only in the form of civil suits for malicious prosecution." (*Id.* 4 (quoting *Pokorny v. First Fed. Sav. & Loan Ass'n of Largo*, 382 So. 2d 678, 682 (Fla. 1980))). Garcia and Ramirez spend the bulk of their Motion arguing that Plaintiffs do not and cannot state a claim for malicious prosecution under Florida law. (*See id.* 4–8).

The Court agrees with Garcia and Ramirez that Plaintiffs fail to state a claim for malicious prosecution, for the simple reason that no prosecution or judicial proceeding is alleged. The Eleventh Circuit has stated:

> Under Florida law, a plaintiff must establish each of six elements to support a claim of malicious prosecution: (1) an *original judicial proceeding* against the present plaintiff was commenced or continued; (2) the present defendant was the legal cause of the original proceeding; (3) the termination of the original proceeding constituted a bona fide termination of that proceeding in favor of the present plaintiff; (4) there was an absence of probable cause for the original proceeding; (5) there was malice on the part of the present defendant; and (6) the plaintiff suffered damages as a result of the original proceeding.

*Kingsland v. City of Miami*, 382 F.3d 1220, 1234 (11th Cir. 2004) (emphasis added). "In the case of a warrantless arrest, the judicial proceeding does not begin until the party is arraigned or indicted." *Id.* at 1235 (citing *Mejia v. City of New York*, 119 F. Supp. 2d 232, 254 (E.D.N.Y. 2000) ("[T]he existence, or lack, of probable cause is measured as of the time the judicial proceeding is commenced (e.g., the time of the arraignment), not the time of the preceding warrantless arrest.")). There was no malicious prosecution if Plaintiffs were never prosecuted.

7

This however does not end our inquiry as to whether Plaintiffs may state a claim against Garcia and Ramirez for their alleged role in "calling the police to falsely arrest and detain Plaintiffs." (Am. Compl. ¶¶ 103, 111). A case relevant to the discussion is *Pokorny*, which Garcia and Ramirez address at length. The Florida Supreme Court in *Pokorny* considered questions certified to it for consideration, including a question to clarify the circumstances under which the actions of the employees of a defendant bank would constitute "direct procurement" of the arrest of individuals suspected of attempted criminal activity.[2] 382 So. 2d at 680–81. In that case, the bank employees mistakenly believed two deaf mute individuals were trying to rob the bank. *See id.* at 680. After the incident, "the F.B.I. was telephoned by First Federal and informed that an attempted robbery had taken place," and the two individuals were handcuffed, detained for one hour, then released without charges filed. *Id.* The Florida Supreme Court stated the following:

> We hold that under Florida law a private citizen may not be held liable in tort where he neither actually detained another *nor instigated the other's arrest* by law enforcement officers. If the private citizen makes an *honest, good faith mistake* in reporting an incident, the mere fact that his communication to an officer may have caused the victim's arrest does not make him liable when he did not in fact request any detention.

*Id.* at 682 (emphasis added). The court further noted,

> In the case sub judice, the evidence does not show that defendant's employees at any time detained either of the plaintiffs. Nor does the record show that the employees of defendant ever *requested the F.B.I. to arrest* either of the plaintiffs. The defendant's employees reported a possible attempted robbery and identified plaintiffs as the suspects. *As long as the employees acted reasonably*, their action did not constitute 'direct procurement of an arrest' as set forth in *Johnson v. Weiner*, supra.

---

[2] The relevant question certified to the Florida Supreme Court was as follows: "Did the actions of the employees of the defendant, First Federal Savings and Loan Association of Largo, Florida, constitute 'direct procurement' of an arrest under the teachings of *Johnson v. Weiner*, 19 So. 2d 699 (Fla. 1944), and its progeny?" 382 So. 2d at 680–81.

*Id.* (emphasis added). The court concluded that the law contained a "general principle that a private citizen, making an *honest, good faith effort* in reporting an incident, cannot be held liable in a case based upon false imprisonment or malicious prosecution unless it further appears that the defendant was *personally involved* in detaining the victim." *Id.* (emphasis added).

As its frequent repetition suggests, the principle of reasonable or honest good faith on the part of the reporting citizen appears to be essential to the Florida Supreme Court's analysis in *Pokorny*. The holding in *Pokorny*, by its own terms, does not absolve the citizen who procures another citizen's arrest by means consisting of less than good faith of liability. An analogy may be had to malicious prosecution cases that Defendants themselves cite. In the context of malicious prosecution, while "merely giving a statement of facts to the authorities does not qualify as legal causation," "if the defendant's persuasion is the determining factor in inducing the officer's decision or if he gives information which he knew to be false and so unduly influences the authorities, then the defendant may be held liable." *Molina v. Jiffy Lube Int'l, Inc.*, No. 07-22664-CIV, 2008 WL 4541025, at *5 (S.D. Fla. Oct. 8, 2008). Likewise, "[g]enerally, police officers are not the legal cause of an original proceeding where they are not involved in the decision to prosecute." *Blackshear v. City of Miami Beach*, 799 F. Supp. 2d 1338, 1347 (S.D. Fla. 2011). However, providing false information to the prosecutor satisfies the legal causation requirement of malicious prosecution. *See id.*

Garcia and Ramirez assert that the claims against them must fail because Plaintiffs do not and cannot allege malice on their part. (*See* Mot. 5–6). Taking the allegations of the Amended Complaint as true, however, the Court does not reach the same conclusion.[3] In relevant part,

---

[3] Garcia and Ramirez note that the claims against them "are premised on negligent behavior; not intentional, willful misconduct." (Mot. 6). One can be liable in negligence for proximately causing a false arrest. *See Glenney v. Forman*, 936 So. 2d 660 (Fla. 4th DCA 2006).

9

Plaintiffs allege:

> [u]pon information and belief, Defendant Regions, along with Defendants Ramirez and Garcia, wrongfully and negligently assumed on the basis of Plaintiff Marshall's race and the size of his federal income tax return check that Plaintiff Marshall was attempting to deposit a possibly fraudulent check.

(Am. Compl. ¶ 26). As to Ramirez specifically, Plaintiffs allege that he

> [f]ail[ed] to use reasonable care in making unfounded determinations about Plaintiff Marshall's legitimate tax refund check on the basis of a racially-biased hunch.

(*Id.* ¶ 103(h)). Plaintiffs further allege that Garcia

> [f]ail[ed] to use reasonable care to supervise tellers and branch personnel, such as Defendant Ramirez, so as to avoid incorrect determinations about Plaintiffs and wrongful accusations against Plaintiffs on the basis of racially-biased hunches.

(*Id.* ¶ 111(g)). The allegations regarding Plaintiffs' race raise a question of whether Garcia and Ramirez acted reasonably and in good faith; this question is not appropriately decided at the motion to dismiss stage.

The Court further notes that the holding in *Pokorny* raises the issue of the level of the citizen's involvement in procuring the arrest, whether by actually requesting arrest or by participating in the physical detention. The court in *Pokorny* suggests that a more active involvement by the citizen in instigating or requesting arrest may be another potential basis for liability. *See* 382 So. 2d at 682. Plaintiffs allege Ramirez failed to use reasonable care in "calling the police to falsely arrest and detain Plaintiffs" (Am. Compl. ¶ 103), suggesting his direct involvement in the arrest, which is another reason not to grant the Motion at this time.

The Court finds that even if Plaintiffs do not allege malicious prosecution as to Garcia and Ramirez, the authorities cited in the Motion do not conclusively demonstrate Plaintiffs cannot state a claim in tort as to Garcia and Ramirez for their alleged roles in the arrest.

10

Garcia and Ramirez further argue, "Plaintiffs [sic] allegations regarding negligent supervision and negligent training depend on the negligent reporting claim and cannot stand alone." (Mot. 2). Rather, "[t]he negligent authentication, training, and supervision claims are window dressing — the crux of the claim is the allegedly negligent reporting to the police. The allegedly negligent conduct of defendants in reporting to the police is an absolutely necessary element of all of Plaintiffs' claims against Defendants." (*Id.* 4). They cite no authority as to why this might be so, and make no other argument as to why the authentication, training, and supervision claims are otherwise invalid. Therefore, as the Court declines to dismiss Plaintiffs' claims in connection with the report made to the police, the Court sees no persuasive reason in the Motion to dismiss the remaining claims.

### IV.   CONCLUSION

Based on the foregoing, it is

**ORDERED AND ADJUDGED** that the Motion **[ECF No. 52]** is **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 9th day of February, 2012.

_____
**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc:   counsel of record